Court of Appeals Case No. 13-1645

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

CARL SUMMERS,
Plaintiff-Appellant

v.

ALTARUM INSTITUTE CORPORATION,
Defendant–Appellee

**On Appeal from the United States District Court
for the Eastern District of Virginia Alexandria Division**

_____

**BRIEF OF APPELLEE**

_____

PAUL W. COUGHENOUR
CARLY E. OSADETZ
CLARK HILL PLC
500 WOODWARD AVENUE, SUITE 3500
(313) 965-8300
pcoughenour@clarkhill.com
cosadetz@clarkhill.com

Attorneys for Defendant-Appellee
Altarum Institute Corporation

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1645__          Caption: __Carl R. Summers v. Altarum Institute, Corp.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Altarum Institute, Corp.__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
          (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?   ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
     If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Paul W. Coughenour          Date:  May 28, 2013

Counsel for: Appellee Altarum Institute, Corp.

## CERTIFICATE OF SERVICE
*****************************

I certify that on ___May 28, 2013___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Paul W. Coughenour                              05/28/2013
    (signature)                                        (date)

# **TABLE OF CONTENTS**

COUNTER-STATEMENT OF THE ISSUES PRESENTED..........................1

STATEMENT OF THE CASE ............................................................... 2

STATEMENT OF FACTS ................................................................... 3

    I.   Factual Background ................................................................ 3

        A.  Plaintiff's Employment ...................................................... 3

        B.  Plaintiff's DCoE Supervisor Preferred In-Office Work...................... 4

        C.  Plaintiff Fell and Injured Himself Exiting a Commuter Train............. 5

        D.  Plaintiff's Doctor Expected a Full Recovery ........................... 5

        E.  Plaintiff And Altarum Communicated Regarding Accommodations for His Injuries ................................................. 6

        F.  Plaintiff Was Terminated After He Did Not Return To Work And DCoE Requested A Replacement................................... 7

        G.  Plaintiff Has Alleged His Physician's Prognosis Was Mistaken.......................................................... 7

        H.  Plaintiff Has Speculated As To The Impact Of Alleged "Mitigating Measures" ................................................. 8

    II.  Procedural History ................................................................ 8

        A.  Plaintiff's First Lawsuit (*"Summers I"*)............................... 8

        B.  Plaintiff's Second Lawsuit (*"Summers II"*)..................................... 10

SUMMARY OF THE ARGUMENT ................................................... 13

STANDARD OF REVIEW .............................................................. 15

ARGUMENT ............................................................................ 16

    I.   The District Court Properly Found That Plaintiff Did Not Plead ................ Sufficient Facts To Plausibly Establish That He  Had An Impairment That Substantially Limited One Or More Major Life Activities As Is Necessary To Be Qualified For Protection Under The ADA ................... 16

A.  The Facts as Pled by Plaintiff Show Only a Temporary Impairment From Which He was Expected to Fully Recover and Not a Substantial Limitation of a Major Life Activity.................................. 17

B.  Plaintiff's Allegations Regarding the Development of His Physical Condition After His Termination Are Irrelevant................................ 28

C.  Plaintiff's Surgery Is Not a "Mitigating Measure" and His Condition Must Be Evaluated In Light of His Post-Surgery Condition ........................................................................................ 30

D.  The EEOC's Regulations Do Not Compel A Finding That the Temporary Impairments Pled By Plaintiff Constitute a Substantial Limitation of a Major Life Activity. ................................................. 33

II.  The District Court Properly Found That Plaintiff Did Not Plead Facts To . Plausibly Show He Was A "Qualified Individual" With A Disability Because He Could Not Could Perform The Essential Functions Of His Job With Or Without A Reasonable Accommodation....................... 37

A.  Plaintiff Has Abandoned The Issue Of Whether he Was A "Qualified Individual". ....................................................................... 40

B.  The Accommodation Requested by Plaintiff To Work at Home Would Not Have Allowed Him to Perform The Essential, On-Site Functions of His Job ........................................................................ 41

C.  Working From Home Indefinitely is Not a Reasonable Accommodation. ................................................................................ 46

D.  As Plaintiff was not Approved to Work From Home, This Was Not a Reasonable Accommodation. .................................................. 48

E.  Plaintiff Cannot State A Claim For Failure To Accommodate Based On Accommodations He Did Not Request. ....................................... 49

F.  Plaintiff Cannot State A Claim For Failure To Accommodate By Alleging That Altarum Failed to Engage in the Interactive Process.. 51

CONCLUSION.....................................................................................53

STATEMENT REGARDING ORAL ARGUMENT ............................................. 54

ii

## INDEX OF AUTHORITIES

**Cases**

*Ainsworth v. Loudon County Sch. Bd.*, 851 F. Supp. 2d 963 (E.D. Va. 2012) ....... 51

*Anderson v. Discovery Comm., LLC*, 2013 U.S. App. LEXIS 6931
(4th Cir. April 5, 2013) ..................................................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................. 15

*Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999) ......................................... 18

*Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761 (4th Cir. 2003) .................. 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 15

*Browning v. Liberty Mutual Ins. Co.*, 178 F. 3d 1043 (8th Cir. 1999) ................... 29

*Budhun v. Reading Hospital and Medical Center*, 2011 U.S. Dist. LEXIS 75910
(E.D. Pa. July 13, 2011) ................................................... 26

*Cash v. Smith*, 231 F. 3d 1301 (11th Cir. 2000) ...................................... 30

*Chamber of Commerce of the United States v. NLRB*, 2013 U.S. App. LEXIS
12034 (4th Cir. 2013) ..................................................... 34

*Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993) .............................. 39

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984) ............. 33

*Clark v. Western Tidewater Reg. Jail Auth.*, 2012 U.S. Dist. LEXIS 9497
(E.D. Va. Jan. 26, 2012) ................................................... 20

*Clay v. Campbell County Sheriff's Office*, 2013 U.S. Dist. LEXIS 89974 (W.D.
Va., June 26, 2013) ....................................................... 22

*Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314
(4th Cir. 2011) ........................................................... 51

*Dahlman V. Tenenbaum*, 2011 U.S. DIST. LEXIS 88220 (D. Md. AUG. 9, 2011) ... 45

*E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175 (4th Cir. 2000) ....... 16

*Feldman v. Law Enforcement Associates Corp.*, 779 F. Supp. 2d 472
(E.D. N.C. 2011) ......................................................... 20

*Fischbach v. Community Mercy Health Partners*, 2012 U.S. Dist.
LEXIS 139019 (S.D. Ohio Sept. 27, 2012) ................................... 27

*FOP Lodge No. 89 v. Prince George's County*, 608 F.3d 183 (4th Cir. 2010) ....... 42

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008) ................................ 16

*Gomez v. Dynamic Mfg.*, 2013 U.S. Dist. LEXIS 90641
(N.D. Ill, June 27, 2013) .................................................. 26

*Grice v. Baltimore County*, 354 Fed. Appx. 742 (4th Cir. 2009) ........................... 40

*Halperin v. Abacus Tech. Corp.*, 128 F.3d 191 (4th Cir. 1997) ............................ 18

*Hansberry v. Computer Eng'g Sys. Corp.*, 1998 U.S. Dist. LEXIS 13508

    (E.D. Va. July 29, 1998) ........................................................................ 50

*Harris v. Reston Hospital Center*, 2013 U.S. App. LEXIS 8323

    (4th Cir. April 24, 2013) ...................................................................... 47

*Haulbrook v. Michelin N Am, Inc.*, 252 F.3d 696 (4th Cir. 2001) .......................... 16

*Hypes v. First Commerce Corp.*, 134 F.3d 721 (5th Cir. 1998)......................46

*Smith v. Ameritech*, 129 F.3d 857 (6th Cir. 1997) ...................................... 46

*Keller v. United States*, 58 F.3d 1194 (7th Cir. 1995) ................................. 42

*Kemp v. Volvo Group North America, Inc.*, 2013 U.S. Dist.

    LEXIS 9454 (W.D. Va. Jan. 24, 2013) .................................................... 51

*Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589

    (S.D. W. Va. 2008) .............................................................................. 47

*Kocsis v. Multi-Care Mgmt., Inc.*, 97 F. 3d 876 (6th Cir. 1996)......................... 29

*Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502

    (E.D. Pa. 2012)................................................................................... 21

*Lucero v. Hart*, 915 F.2d 1367 (9th Cir. 1990)............................................ 39

*McIntyre-Handy v. APA Customer Services, Inc.*, 2005 U.S. Dist.

    LEXIS 41752 (E.D. Va. May 13, 2005) .................................................. 46

*McMillan v. City of New York*, 711 F.3d 120 (2nd Cir. 2013)..................... 39, 44, 47

*Merriweather v. Chicago Transit Authority*, 2013 U.S. Dist.

    LEXIS 19590 (N.D. Ill., Feb. 8, 2013) .................................................... 27

*Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261 (4th Cir. 2004) ............................ 42

*Miller v. Stratford House Ret. Cmty.*, 2012 U.S. Dist. LEXIS 56881 (W.D. Va.

    Apr. 24, 2012) ................................................................................... 18

*Miller v. Stratford House Retirement Comm.*, 2012 U.S. Dist.

    LEXIS 56881 (W.D. Va. April 24, 2012)................................................. 21

*Myers v. Hose*, 50 F.3d 278 (4th Cir. 1995) ........................................... 46, 50

*Pollard v. High's of Balt., Inc.*, 281 F.3d 462 (4th Cir. 2002).................... 10, 18, 20

*Poper v. SCA Americas, Inc.*, 2012 U.S. Dist. LEXIS 113653

    (E.D. Pa., Aug. 13, 2012)..................................................................... 27

*Ramey v. Forest River, Inc.*, 2012 U.S. Dist. LEXIS 131269

    (N.D. Ind. Sept. 12, 2012)..................................................................... 25

*Rankin v. Loews Annapolis Hotel Corp.*, 2012 U.S. Dist. LEXIS
    67553 (D. Md. May 14, 2012) ........................................................ 21, 25

*Reynolds v. American National Red Cross,* 701 F.3d 143 (4th Cir. 2012) .............. 23

*Rhoads v. FDIC* .................................................................................... 9, 38

*Rohan v. Networks Presentations LLC*, 375 F.3d 266 (4th Cir. 2004) ........ 16, 17, 38

*Scott v. Sebelius*, 2013 U.S. Dist. LEXIS 26864 (D. Md., Feb. 25, 2013) ............. 22

*Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481 (7th Cir. 1997).. 42

*Southeastern Community College v. Davis*, 442 U.S. 397 (1979).......................... 39

*Thornton v. Gonzalez, 2007 U.S. Dist. LEXIS 98039*
    *(E.D. Va. Aug. 27, 2007)* ...................................................................... 13, 46

*Toyota Mfg., Ky. Inc. v. Williams*, 534 U.S. 184 (2002)........................................ 17

*Tyndall v. Nat'l Ed. Centers, Inc.*, 31 F.3d 2094th Cir. 1994)......... 13, 38, 39, 46, 48

*United States v. Al-Hamdi*, 356 F.3d 564 (4th Cir. 2004) ..................................... 40

*Vande Zande v. Wis. Dept. of Admin.*, 44 F.3d 538 (7th Cir. 1995) ....................... 46

*Wanamaker v. Westpoint Bd. of Ed.*, 2012 U.S. Dist. LEXIS 136947 (D. Conn.
    Sept. 25, 2012) ......................................................................................... 21

*Wells v. BAE Systems Norfolk Ship Repair*, 483 F. Supp. 2d 497
    (E.D. Va. 2007) ........................................................................................ 51

*Willinghan v. Town of Stonington*, 847 F. Supp. 2d 164 (D. Maine 2012).............. 43

*Wilson v. Dollar General Corp.,* 717 F.3d 337 (4th Cir. 2013).............................. 28

*Yousefi v. INS*, 260 F.3d 318 (4th Cir. 2001) ...................................................... 40

*Zick v. Waterfront Comm'n of N.Y. Harbor*, 2012 U.S. Dist. LEXIS
    144920 (S.D. N.Y. Oct 4, 2012) .................................................................. 24

## Statutes

42 U.S.C. § 12101(a), (b)........................................................................... 35

42 U.S.C. § 12102(1)................................................................................. 17

42 U.S.C. § 12102(4)(E)............................................................................. 31

42 U.S.C. § 12102(4)(E) (i) ........................................................................ 31

42 U.S.C. § 12111(8) ................................................................................. 38

42 U.S.C. §§ 12101 *et. seq.* ......................................................................... 9

**Rules**

Fed. R. App. P. 28(a)(9)(A) ................................................................ 40
Fed. R. Civ. P. 12(b)(6).............................................................. 10, 15

**Regulations**

*29 C.F.R. § 1630.2(j)(1)(ix)* .......................................... 37
*29 C.F.R. § 1630.2(j)(1)(vi)* .......................................... 31
*29 C.F.R. 1630.2(j)(1)(ii)* .............................................. 23
*29 C.F.R. Part 1630* ....................................................... 22
*76 Fed. Reg. 16,977 (March 25, 2011)* ...................…............31
*76 Fed. Reg. 16,983 (March 25, 2011)* ...................….............32

**Legislative Materials**

154 Cong. Rec. S8840 (2008)(statement of Sen. Tom Harkin).....................23

## COUNTER-STATEMENT OF THE ISSUES PRESENTED

1.    Whether the Court should affirm the district court's dismissal of Plaintiff's Complaint where he failed to plead sufficient facts to plausibly establish that he had a disability cognizable under the American with Disabilities Act, where Plaintiff alleged only a temporary impairment that was expected to fully heal within one year.

2.    Whether the Court should affirm the district court's dismissal of Plaintiff's Complaint where he failed to plead sufficient facts to plausibly show that he was a "qualified individual" under the Americans with Disabilities Act, where Plaintiff abandoned this issue on appeal and Plaintiff failed to request a reasonable accommodation that would permit him to perform the essential functions of his job.

## <u>STATEMENT OF THE CASE</u>

This case deals with two legal questions which have been addressed by this Court, and answered in a manner consistent with the district court's decision: Does the Americans with Disabilities Act ("ADA") protect an employee who suffers a broken leg and other injuries that are expected to heal completely within one year? And, if the ADA covers an employee with such a condition, can working exclusively at home for months be a reasonable accommodation of that disability when the employee's essential job functions require on-site office work?

The district court got both questions right on two separate occasions. Specifically, the district court twice dismissed Plaintiff's complaints and held, in full accord with prevailing law, that a temporary impairment due to an injury that is fully expected to heal within a number of months is not an ADA-cognizable disability. Even Plaintiff's counsel agreed that the district judge would be "the first judge in America" to declare a plaintiff disabled under the ADA because he had broken legs and was unable to walk.

The district court also twice correctly held that working at home on an indefinite basis was not a reasonable accommodation, particularly where it would not allow the Plaintiff to perform the essential functions of his position, namely, to work on-site for a client of the Defendant. As such, Plaintiff failed to plead facts plausibly showing he was a qualified individual under the ADA.

2

For these reasons, and as more fully addressed below, the district court's holding that Plaintiff Carl Summers failed to allege sufficient facts to plausibly demonstrate he was a qualified individual with a disability as defined by the ADA should be affirmed, and Plaintiff's appeal should be dismissed.

## STATEMENT OF FACTS

I. **Factual Background**[1]

A.    **Plaintiff's Employment**

Altarum Institute Corporation ("Altarum") is a Michigan-based non-profit corporation that provides a variety of consulting and research services to private-sector companies and the federal government. *[J.A. at 38, ¶ 5].* While Altarum maintains a business location in Alexandria, Virginia, its employees may be assigned to work as contractors at the offices of Altarum's clients. *[Id., ¶ 9].*

In July 2011, Plaintiff-Appellant Carl Summers ("Plaintiff") was hired by Altarum as a Senior Analyst, a combination of researcher and statistician. *[J.A. at 38, ¶ 8].* Plaintiff was responsible for conducting research, performing data analysis, writing reports, making presentations, and SPSS programming. *[Id.].* Although Plaintiff began working for Altarum at its Alexandria, Virginia office, he was then assigned to work as a contractor at one of Altarum's clients, the Department of Defense Centers of Excellence for Psychological Health and

---

[1] These facts are based on those pled in Plaintiff's Complaint. *[J.A. at 37-49].*

3

Traumatic Brain Injury ("DCoE"), in Silver Spring, Maryland. *[Id. at 38-39, ¶ 9].* In this role, Plaintiff commuted to DCoE's offices. *[Id.]*

Prior to working for Altarum, Plaintiff had worked for Henry Jackson Foundation ("HJF"), also on a contract for a unit of DCoE. *[J.A. at 6-7, ¶¶ 13-15].* Plaintiff was terminated by HJF for errors allegedly caused by his attention deficit disorder ("ADD"). *[Id.].* He then retained legal counsel, who negotiated a severance package on his behalf. *[Id.].* When Plaintiff's supervisor at Altarum learned in September, 2011 of his termination from HJF, she confronted him with his failure to disclose this fact to Altarum. *[Id. at 7, ¶ 16-17].*

## B.    Plaintiff's DCoE Supervisor Preferred In-Office Work

As a contractor assigned to DCoE, Plaintiff worked at DCoE's premises under the direction of a DCoE supervisor, Kathy Helmrick. *[J.A. at 39].* Ms. Helmrick preferred that contractors such as Plaintiff work at DCoE's offices during normal business hours. *[Id.].* Although DCoE did permit contractors to work remotely from home "when putting in extra time on the project" *[Id.],* Plaintiff does not allege that he or other contractors were permitted to work at home on a routine, indefinite or extended basis.

Plaintiff has also acknowledged that client approval was needed for a contractor to work at home. *[J.A. at 39].* If the client approved one of Altarum's employees to work remotely, Altarum's general policy was to permit the employee

4

to work remotely. *[Id.]*. Plaintiff does not allege that DCoE ever approved him to work remotely or at home. *[Id. at 38-48]*. Plaintiff also does not allege that Altarum had independent authority to permit him to work at home while fulfilling his duties for DCoE. *[Id]*.

### C.    Plaintiff Fell and Injured Himself Exiting a Commuter Train

On October 17, 2011, Plaintiff fell and injured himself while exiting a commuter train en route to DCoE's office in Silver Spring, Maryland. *[J.A. at 39]*. Plaintiff's left knee took the brunt of the fall. *[Id.]*. As a result of the fall, Plaintiff fractured a bone and tore meniscus cartilage in his left leg and fractured his ankle and tore a tendon in his right leg. *[Id. at 39-40]*.

### D.    Plaintiff's Doctor Expected a Full Recovery

After his injury, Plaintiff notified Altarum of his injuries and resulting limitations. *[J.A. at 45, ¶ 40]*. Specifically, Plaintiff's doctor restricted him from bearing weight on his left leg for "about six weeks," an estimate Plaintiff alleges was accurate. *[Id. at 40, ¶ 15]*. This necessarily means Plaintiff was able to bear weight on his left leg after six weeks. *[Id.]*. Plaintiff's doctor also restricted him from driving for "five months;" again, Plaintiff alleges this was accurate. *[Id.]*. Thus, in less than six months, Plaintiff was able to drive. *[Id.]*.

As for walking normally, Plaintiff alleges that his doctor accurately estimated that he would be able to "walk normally in, at the earliest, seven

months," although he would have "mobility issues" and "substantial pain." *[J.A. at 40, ¶ 15].*

Finally, Plaintiff's physician expected he would regain complete mobility and walk free of pain within a year. *[J.A. at 40, ¶ 15]* Plaintiff alleges this estimate turned out to be inaccurate. *[Id.].*

### E.    Plaintiff And Altarum Communicated Regarding Accommodations for His Injuries

While he was in the hospital, Plaintiff discussed his injuries and possible accommodations with Altarum. *[J.A. at 40, ¶ 17].* Altarum's Human Resources Representative suggested to Plaintiff that he apply for short-term disability benefits ("STD"). *[Id.].* Plaintiff did, and his request for STD benefits was approved by Altarum's insurance carrier, Lincoln Financial Group, on November 10, 2011. Benefits were approved for the period from October 18, 2011 through January 16, 2012.[2] *[J.A. at 41, ¶¶ 22-23].*

Plaintiff also inquired about "working remotely full- or part-time" and claims he proposed to work remotely part-time, and then transition to full-time. *[J.A. at 41, ¶ 20].* Plaintiff does not allege, however, that he provided Altarum with a definite or anticipated time frame within which he would be able to start

---

[2] Plaintiff was paid STD benefits until sometime between December 16, 2011 and January 3, 2012 when the payments stopped. He then received a lump sum payment on or about March 21, 2012 for the balance of the STD benefits he was owed. *[J.A. at 42, ¶¶ 30, 32].*

6

either part- or full-time work from home, nor does he allege that he provided Altarum a date by which he could return to work on-site for DCoE. Plaintiff also does not allege that his request to work remotely part- or full-time was approved by Altarum's client, DCoE.

### F.   Plaintiff Was Terminated After He Did Not Return To Work And DCoE Requested A Replacement

Plaintiff did not return to work part-time or full-time. Instead, on November 30, 2011, Altarum informed Plaintiff that he was being terminated effective December 1, 2011 to allow Altarum to place another analyst in Plaintiff's role at DCoE during his continued absence. *[J.A. at 41, ¶ 25]*. Plaintiff was also informed that DCoE had requested his replacement with another analyst, and that Altarum did not have another available assignment for him.[3] *[Id., ¶ 26]*.

### G.   Plaintiff Has Alleged His Physician's Prognosis Was Mistaken

Plaintiff has alleged that his report to Altarum of his injuries and resulting limitations turned out to be inaccurate. Specifically, Plaintiff claims that his physician's estimate he would gain complete mobility and walk pain free within a year was "optimistic." *[J.A. at 40, ¶ 15]*. Plaintiff further alleges that he continues "to suffer from the residual effects of his disability," that he still has significant

---

[3] Plaintiff has speculated, without factual support, that this statement was untrue. *[J.A. at 41, ¶ 26]*. Presumably, Plaintiff is referring to that portion of the statement indicating DCoE had requested his replacement. Regardless, Plaintiff's sheer speculation is not a factual allegation which must be accepted as true.

7

pain when climbing stairs, and that he has not regained his previous level of balance. *[Id. at 42, ¶¶ 33-34].* Plaintiff does not allege, however, that any of this was known to Altarum at the time of his termination.

### H. Plaintiff Has Speculated As To The Impact Of Alleged "Mitigating Measures"

Plaintiff has alleged that he was continuing physical therapy as of December 27, 2012, and that he would not have been able to walk without mitigating measures "likely to this day." *[J.A. at 40, ¶ 16].* Plaintiff does not identify, however, any factual basis for this speculation, nor does he allege that his opinion is based upon medical information provided by his physician or other medical professionals. Further, Plaintiff has not alleged Altarum was aware his condition was more serious than Plaintiff's physician estimated, or that this information was available to Altarum prior to its decision to terminate Plaintiff's employment.

## II. Procedural History

### A. Plaintiff's First Lawsuit (*"Summers I"*)

Plaintiff's original lawsuit (*"Summers I"*), Case No. 12-CV-1041, was filed on September 18, 2012 in the United States District Court for the Eastern District of Virginia, Alexandria Division, before the Honorable Gerald Bruce Lee. *[J.A. at 74].* On October 2, 2012, Plaintiff filed a First Amended Complaint, alleging the same two claims as are at issue in the instant case. *[J.A. at 4-14].* In Count I,

8

Plaintiff alleged he had been wrongfully discharged under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et. seq.*, and in Count II he alleged a failure to accommodate, likewise under the ADA. *[Id.]*

Altarum filed a Motion to Dismiss the First Amended Complaint which was heard before Judge Gerald Bruce Lee on December 14, 2012. At the hearing, Plaintiff's counsel asserted that Plaintiff "worked for a government agency," and that "at least part of his job required him to actually get to the worksite." *[J.A. at 24]*. Plaintiff's counsel further asserted that Plaintiff "has to move around the office, walk from meeting to meeting, meet with clients. He wasn't just sitting at a desk. He was at a government agency engaging in various technical and security services and was required to walk in order to accomplish that job." *[Id. at 25]*. Plaintiff's counsel also specifically agreed that Plaintiff had to be at the office to do his job. *[Id. at 29]*. Yet, Plaintiff's counsel conceded Plaintiff "would not be able to do anything for several months in terms of getting to the office and then eventually would be able to get to work perhaps on crutches." *[Id. at 27]*

Applying the *Bell Atlantic v. Twombly* standard of whether Plaintiff had pled facts sufficient to set forth a plausible claim that he was disabled, the district court ruled that he had not. First, after noting that disabled under the ADA means "a physical impairment that substantially limits one or more major life activities" under *Rhoads v. FDIC*, the district court concluded that Plaintiff's impairment was

9

temporary because he was expected to recover within a year of his injury. *[J.A. at 32].* Further, it found that Plaintiff had failed to allege any facts that would plausibly suggest his injury was long-term, permanent or otherwise severe enough to be covered by the ADA, citing *Pollard v. High's of Baltimore. [Id. at 32, 34].* Second, the district court found that one of the basic elements of Plaintiff's job was to come to work, and that working from home was not a reasonable accommodation. *[Id. at 35].* For these reasons, the district court dismissed Plaintiff's Complaint without prejudice.

### B.     Plaintiff's Second Lawsuit (*"Summers II"*)

While the dismissal of *Summers I* was without prejudice, Plaintiff chose not to file a second amended complaint. Instead, on December 27, 2012, Plaintiff filed a second two-count Civil Complaint in the U.S. District Court for the Eastern District of Virginia, Alexandria Division, being Case 12-CV-1493 ("*Summers II*"). *[J.A. 37-48].* Plaintiff again alleged that Altarum had wrongfully terminated (Count I) and failed to accommodate him (Count II) under the ADA. While Plaintiff slightly modified some of his previous factual allegations, the gist of his alleged disability was the same: he had suffered a broken leg and other injuries which were expected to completely heal in seven to twelve months. *[Id.].*

On March 11, 2013, Altarum filed its Motion to Dismiss in *Summers II* under Fed. R. Civ. P. 12(b)(6). Altarum again argued that Plaintiff was not a

"qualified individual with a disability" under the ADA. Altarum also argued that Plaintiff's requested accommodations of working indefinitely at home and an indefinite leave of absence were unreasonable as a matter of law.

On April 26, 2013, the district court held a hearing on Defendant's Motion to Dismiss in *Summers II* and again granted same. During this hearing, Plaintiff's counsel asserted facts not found in Plaintiff's Complaint, including the claim that Plaintiff "broke both of [his] legs, not one but both," and "would be wheelchair bound possibly for a whole year..." *[J.A. at 61].*

When asked to identify a case supporting his claim that a temporary impairment expected to fully heal was a disability under the ADA, Plaintiff's counsel could not. Instead, he stated:

> There is no case as of yet before this circuit that we could find in which the plaintiff claimed that he was disabled because he had broken legs and couldn't walk. *[J.A. at 63].*

As to the accommodation issue, Plaintiff's counsel stated that "the only one [accommodation] he actually did propose" was to "work from him [sic: home]." *[J.A. at 69]* In the next breath, Plaintiff's counsel asserted that "the question isn't whether work from home [the only accommodation requested] is reasonable. The question is whether the defendant engaged in interactive discussions..." *[Id. at 71].* Plaintiff's counsel further acknowledged Plaintiff received short term disability pay for 90 days. *[Id. at 70].*

11

In ruling, the district court first noted that in *Summers I,* it held that Plaintiff failed to state a claim because "his injuries did not qualify for disability under the ADA because his injuries were not permanent and were expected to heal within a year." *[J.A. at 74].* The court then stated that the threshold issue was whether Plaintiff had "set forth facts which plausibly suggest he was disabled within the meaning of the [ADA] at the time he was fired." *[Id. at 75].*

Again citing *Rhoads v FDIC,* the district court found that while Plaintiff had "suffered a very serious injury," "the impairment was temporary because he alleged he was expected to recover within a year of his initial injury." *[J.A. at 75].* The district court also held that the ADAAA did not intend to overturn the Supreme Court's holdings in *Toyota Manufacturing* and *Sutton v United Air Lines* that a temporary condition is not an ADA disability, and further concluded that *Pollard* remained good law. *[Id. at 77-78].* The district court then concluded:

> I have to consider the nature and severity of the impairment, of whether it was permanent or long-term impact, and impairment simply cannot be a substantial limitation of a major life activity if it is intended to improve or expected to improve in a relatively short period of time.
>
> Here, it seems to [the Court] that this doctor's estimate, seven months to 12 months, is insufficient to state a claim of disability. *[J.A. at 78].*

In so holding, the district court referenced cases holding that broken legs are "among the many type of temporary injuries unprotected as a disability under the

12

ADA," and further stated that "courts do not recognize injuries where there's a relatively short recovery period substantially limiting impairments." *[J.A. at 78].* Accordingly, the district court concluded that Plaintiff had not alleged an ADA disability. *[Id. at 79].*

As to Plaintiff's accommodation claim, the district court held it failed for two reasons. First, it found that the request to work from home indefinitely was unreasonable under its *Thornton v. Gonzalez* decision and *Tyndall v. National Education Centers* because it sought to eliminate a significant function of the job, namely, attendance at work. *[J.A. at 79-80].* Second, it concluded that whether or not an employer fails to engage in an interactive process with respect to a requested accommodation in and of itself does not state a claim. *[Id. at 80].*

Accordingly, the district court granted Altarum's Motion to Dismiss, found that further amendment would be futile, and entered judgment in Altarum's favor on May 15, 2013.

On May 16, 2013, Plaintiff filed his Notice of Appeal.

## SUMMARY OF THE ARGUMENT

The district court correctly found that Plaintiff did not plead a plausible claim under the ADA because his factual allegations, even when taken as true, fail to demonstrate his impairment constituted a cognizable disability under the ADA. First, Plaintiff has not alleged that he suffers from any permanent or long-term

13

condition; rather, he alleges only that he was injured and temporarily impaired in the major life activity of walking. Thus, Plaintiff has not pled facts sufficient to show he was substantially limited in a major life activity. Second, contrary to well-established law, Plaintiff has asked the Court to evaluate his impairment based not on his condition as known at the time of his termination, but rather based on his condition as it developed over time. Third, Plaintiff asks the Court to accept speculative allegations about his condition without the benefit of surgery, claiming surgery is a "mitigating measure" under the ADAAA. Plaintiff's arguments are not well-founded, and the district court's judgment should be affirmed.

Even assuming for the sake of argument the district court may have erred in holding that Plaintiff's alleged impairment did not substantially limit a major life activity, it correctly concluded Plaintiff was not a "qualified individual" under the ADA. This is because, taking Plaintiff's factual pleadings as true, he did not request a reasonable accommodation that would allow him to perform the essential functions of his job within a short time period. Plaintiff requested only one accommodation: to be able to work from home for a period of several months. This accommodation would not have allowed Plaintiff to perform essential job functions such as meeting with clients, making presentations, and attending other work-related meetings. For this reason as well, the district court's judgment of dismissal must be affirmed.

14

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests whether a legally sufficient claim has been pled in the complaint and provides for dismissal when a plaintiff fails to state a claim upon which relief may be granted. *Fed. R. Civ. P. 12(b)(6).* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires more than a "sheer possibility that a defendant has acted unlawfully." *[Id.]*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Therefore, the complaint must "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Although a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Finally, the court need not accept the complainant's legal conclusions or any other unreasonable or unwarranted arguments as true. *Giarratano v. Johnson*, 521

F.3d 298, 302 (4th Cir. 2008); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Instead, the court should call upon "its judicial experience and common sense" to determine whether a plaintiff is entitled to relief. *Iqbal,* 556 U.S. at 679. A district court's dismissal of an action under Rule 12(b)(6) may be affirmed "on any basis fairly supported by the record." In *Re Total Reality Mgmt., LLC*, 706 F.3d 245, 250 (4th Cir. 2013)

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY FOUND THAT PLAINTIFF DID NOT PLEAD SUFFICIENT FACTS TO PLAUSIBLY ESTABLISH THAT HE HAD AN IMPAIRMENT THAT SUBSTANTIALLY LIMITED ONE OR MORE MAJOR LIFE ACTIVITIES AS IS NECESSARY TO BE QUALIFIED FOR PROTECTION UNDER THE ADA.

"One is within the ADA's protected class if one is a 'qualified individual with a disability.'" *Haulbrook v. Michelin N Am, Inc.,* 252 F.3d 696, 702 (4th Cir. 2001). Thus, a plaintiff must be both qualified and disabled in order to be protected by the ADA. *Id.* In the context of a wrongful discharge action, Plaintiff must show that: (1) he was a "qualified individual with a disability;" (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of discrimination. *Rohan v. Networks Presentations LLC,* 375 F.3d 266, 273 n. 9 (4th Cir. 2004).

16

Plaintiff here failed to plead sufficient facts to plausibly conclude he had a disability. The ADA defines disability as any one of the following: "(A) a physical or mental impairment that substantially limits one or more . . . major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Rohan*, 375 F.3d at 273. "[H]aving a 'physical or mental impairment' is not sufficient on its own to establish an ADA-cognizable disability, nor is showing that the impairment affects 'one or more major life activities.' An individual must also show []he is 'substantially limit[ed]' as a result of the impairment." *Anderson v. Discovery Comm., LLC*, 2013 U.S. App. LEXIS 6931 at *8 (4th Cir. April 5, 2013) (citations omitted).

Plaintiff in this case has proceeded solely under subsection (A); thus, he was required to plead facts plausibly showing an impairment that substantially limited one or more major life activities.

A.   THE FACTS AS PLED BY PLAINTIFF SHOW ONLY A TEMPORARY IMPAIRMENT FROM WHICH HE WAS EXPECTED TO FULLY RECOVER AND NOT A SUBSTANTIAL LIMITATION OF A MAJOR LIFE ACTIVITY.

Plaintiff failed to plead sufficient facts to demonstrate he was substantially limited in the major life activity of walking because his impairment, based on the facts as pled by Plaintiff, was undeniably temporary in nature. Temporary, non-chronic impairments of limited duration do not qualify as a disability under the ADA. *See Toyota Mfg., Ky. Inc. v. Williams*, 534 U.S. 184, 198 (2002); *Pollard v.*

17

*High's of Balt., Inc.*, 281 F.3d 462, 468 (4th Cir. 2002); *Miller v. Stratford House Ret. Cmty.*, 2012 U.S. Dist. LEXIS 56881 (W.D. Va. Apr. 24, 2012).

In *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 200 (4th Cir. 1997), *overruled on other grounds, Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999), this Court explained the reason for excluding temporary impairments from ADA coverage:

> Applying the protections of the ADA to temporary impairments, such as the one presented here, would work a significant expansion of the Act. The ADA simply was not designed to protect the public from all adverse effects of ill-health and misfortune. Rather, the ADA was designed to assure [] that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. Extending the statutory protections available under the ADA to individuals with **broken bones, sprained joints, sore muscles, infectious diseases, or other ailments that temporarily limit an individual's ability to work would trivialize this lofty objective**. (Emphasis added.)

Thus, concern about stereotypes facing truly disabled individuals, and not a concern for those incurring temporary injuries, motivated passage of the ADA. Broken bones, sprained joints and similar ailments resulting in temporary impairments were not intended to be covered by the ADA.

*Pollard* made this clear. In *Pollard,* this Court found that the plaintiff's nine (9) month absence resulting from surgery due to a back injury was "insufficient to demonstrate that Pollard had a permanent or long-term impairment that

significantly restricted a major life activity." 281 F.3d at 469. Noting that recovering from surgery can frequently take several months, the Court stated "physical impairments while recuperating from surgery are not evidence of a permanent disability." *Id.* Further, the Court noted that Pollard's condition was thought by her physician to be only temporary and that she "was expected to make a full recovery." *Id.*

Based on these facts, the Court held that Pollard was not a disabled individual under the ADA. In so holding, the Court stated:

> Of course, an impairment that is not substantially limiting under the ADA definition of "disability" can still be a source of understandable concern for the individual affected. We do not make light of Pollard's surgery or the period of recuperation that followed it. However, applying the protections of the ADA to temporary impairments, such as Pollard's, would dramatically expand the scope of the Act. See, e.g., *Halperin,* 128 F.3d at 200. Congressional findings, enacted as part of the ADA, require the conclusion that Congress did not intend for the Act's protections to extend to individuals with temporary impairments. *Id.* at 471-472.

The same basic facts as were present in *Pollard* are present here. Plaintiff here alleges that he had surgery for injuries that resulted in a temporary impairment, and he does not allege that he suffered from a permanent, long-term condition. As in *Pollard,* Plaintiff here was expected by his physician to make a full recovery, including walking "normally" within seven months and regaining

19

complete mobility within one year.  Thus, under *Pollard*, it is plain that Plaintiff's condition did not warrant the protection of the ADA.

Without citing a case to support the proposition, Plaintiff argues that the ADAAA expressly overturned the relevant portions of *Toyota Motor Mfg., Ky. Inc. v. Williams* and *Sutton v. United Air Lines, Inc.*, which, according to Plaintiff effectively overturned *Pollard v. High's of Balt, Inc.*  Amici Curiae also claim that *Pollard* is no longer good law.

To the contrary, since the passage of the ADAAA, courts have held that the ADA amendments did not overturn the conclusions in *Toyota*, *Sutton*, and *Pollard* that a temporary condition does not constitute a disability under the ADA.  See *Feldman v. Law Enforcement Associates Corp.*, 779 F. Supp. 2d 472, 484 (E.D. N.C. 2011) (stating "[t]he ADAAA does not explicitly overturn the finding in *Toyota Motor* that temporary disabilities do not qualify for ADA protection.").

Numerous courts in the Fourth Circuit have reached the same conclusion, holding that temporary impairments resulting from injuries are not disabilities under the ADAAA.  For example, in *Clark v. Western Tidewater Reg. Jail Auth.*, 2012 U.S. Dist. LEXIS 9497 (E.D. Va. Jan. 26, 2012), the court stated that "[under the ADAAA], courts in this Circuit continue to recognize that temporary impairments generally do not qualify as impairments that substantially limit major life activities."

20

Similarly, in *Rankin v. Loews Annapolis Hotel Corp.*, 2012 U.S. Dist. LEXIS 67553 (D. Md. May 14, 2012), the court cited *Pollard, supra,* and stated "the term 'disability' does not include 'temporary medical conditions…even if those conditions require extended leaves of absence from work.'").

Again, in *Miller v. Stratford House Retirement Comm.*, 2012 U.S. Dist. LEXIS 56881 (W.D. Va. April 24, 2012), the court cited *Toyota, Sutton,* and *Pollard, supra,* and held "an impairment's impact on a major life activity must be 'permanent or long-term.'"  See, also, *Wanamaker v. Westpoint Bd. of Ed.*, 2012 U.S. Dist. LEXIS 136947 (D. Conn. Sept. 25, 2012) ("even under the ADAAA's broadened definition of disability short term impairments would still not render a person disabled within the meaning of the statute.").

As expressed in *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012)*,* the 2008 Amendments did not extend the scope of ADA coverage to temporary impairments:

> In fact, the ADAAA was adopted to specifically address certain impairments that were not receiving the protection that Congress intended – **cancer, HIV-AIDS, epilepsy, diabetes, multiple sclerosis, amputated and partially amputated limbs, post-traumatic stress disorder, intellectual and developmental disabilities –** not minor, transitory impairments, except if of such a severe nature that one could not avoid considering them disabilities. (emphasis added).

21

*Pollard* was also recently applied under the Rehabilitation Act in *Scott v. Sebelius*, 2013 U.S. Dist. LEXIS 26864 (D. Md., Feb. 25, 2013). There, the court expressly applied *Pollard* and held:

> To be 'substantially limiting,' an impairment must interfere with a major life activity 'considerably' or 'to a large degree' and the impairment must be permanent or long term. *Id.* at *14.

Thus, there is no merit to the argument of Plaintiff and Amici Curiae that *Pollard* is no longer good law. To the contrary, they seek a significant judicial expansion of the ADAAA to cover virtually anyone who suffers from a temporary medical condition, even though they are expected to fully recover. The ADA, in short, will no longer be about persons with disabilities, but rather about persons with injuries, contrary to its intended purpose. See, *Clay v. Campbell County Sheriff's Office*, 2013 U.S. Dist. LEXIS 89974 at *10-11. (W.D. Va., June 26, 2013) (finding plaintiff's surgery for a temporary, one-time condition failed to state a claim under the ADA; "to hold otherwise would mean that anyone who became ill and had to miss work for a period of time would suffer from a 'disability' under the ADA.")

In fact, the ADAAA did not alter "the ADA's basic definition of 'disability' as an impairment that substantially limits one or more major life activities." *See 29 C.F.R. Part 1630.* Although the 2008 Amendments were intended to expand the scope of coverage under the ADA, it remains true that "[n]ot every impairment

22

will constitute a disability within the meaning of [the ADA]." *29 C.F.R. 1630.2(j)(1)(ii); see also* 154 Cong. Rec. S8840 (2008)(statement of Sen. Tom Harkin) ("We reaffirm that not every individual with a physical or mental impairment is covered by the first prong of the definition of disability in the ADA."). Even under the 2008 Amendments, therefore, a plaintiff is still required to plead a substantially limiting impairment.

This was expressly recognized by this Court in *Reynolds v. American National Red Cross,* 701 F.3d 143, 154, n. 10 (4th Cir. 2012):

> The ADAAA retains the "substantial limitation" language, but it requires a lesser "degree of limitation" than that imposed by *Toyota [Motor Mfg v Williams,* 534 U.S. 184 (2002)]. 122 Stat. at 3553-54. "Substantially limits" no longer means "significantly restricted." *Id.* at 3554. Although the revisions are somewhat vague, any findings of disability should be interpreted "consistently with the findings and purposes of the ADA Amendments Act of 2008" which include "eliminat[ing] discrimination" of disabled persons. *Id.* at 3554-56. Based on the record before us, and for the reasons stated *supra,* [plaintiff] does not advance evidence sufficient to show that he is disabled or is the type of plaintiff intended to be covered under the original version of the ADA or under the ADAAA.

The Court in *Reynolds* concluded that under either the ADA or the ADAAA, plaintiff's 25 pound lifting limitation did not constitute a significant restriction on his ability to life, work, or perform any major life activity, and thus he was not a qualified individual with a disability.

23

In short, Congress did not intend that the ADA protect everyone who becomes ill or suffers injury. In adopting the ADAAA, Congress intended to expand the protections of the ADA to those suffering from permanent and long-term conditions such as cancer, HIV, epilepsy, diabetes and multiple sclerosis, but it expressed no intention to cover those suffering from temporary impairments due to injuries. Simply put, Congress did not intend to overturn *Pollard* and similar cases by extending the ADA to those suffering temporary impairments from which they were expected to fully recover.

Because the ADA was not intended to protect individuals with broken bones and other similar ailments, courts routinely grant motions to dismiss under Rule 12(b)(6) where the plaintiff alleges nothing more than a temporary impairment that is expected to heal completely. For example, in *Zick v. Waterfront Comm'n of N.Y. Harbor*, 2012 U.S. Dist. LEXIS 144920 (S.D. N.Y. Oct 4, 2012), the plaintiff fell and broke her leg in two places, requiring a cast and the use of crutches. Her doctor advised her to remain at home for eight to ten weeks and to keep her leg elevated as much as possible. After her employment was terminated, the plaintiff brought a disability discrimination suit under the ADA. In granting the defendant's motion to dismiss under Rule 12(b)(6), the court stated:

> Not every injury is considered a disability under the ADA. Courts within this circuit, and the vast majority of courts elsewhere, have held that temporary disabilities do

24

not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the act. **A broken leg falls among the types of temporary injuries unprotected as a "disability" under the ADA.** Even a more serious injury, such as a broken hip, may not be considered a 'disability' for purposes of the ADA unless the hip heals improperly, resulting in long-term difficulty in walking .... as Plaintiff's injury is not a "disability" under the ADA, her first cause of action is dismissed. *Id.* at *11-12 (emphasis added) (citations omitted).

A similar result was reached in *Rankin v. Loews Annapolis Hotel Corp.*, 2012 U.S. Dist. LEXIS 67553 (D. Md. May 14, 2012). There, the plaintiff underwent surgery on his left knee, resulting in chronic pain and complications requiring the need for continuing treatment. In granting the defendant's motion to dismiss the plaintiff's ADA claim under Rule 12(b)(6), the court noted that the plaintiff had not identified how his condition substantially limited any major life activity. It further held that plaintiff's "knee buckling" was not a disability, as "the term 'disability' does not include temporary medical conditions [] even if those conditions require extended leaves of absence from work." *Id.* at *10

Likewise, in *Ramey v. Forest River, Inc.*, 2012 U.S. Dist. LEXIS 131269 (N.D. Ind. Sept. 12, 2012), the plaintiff suffered a shoulder injury which lasted three weeks, during which time he performed light duty work. A week after he was returned to work full-duty by his doctor, the plaintiff was terminated from his employment. In finding that the plaintiff had not properly pled a disability and

25

granting the defendant's motion to dismiss under Rule 12(b)(6), the court stated: "[c]learly, impairments of short duration simply are not disabilities." *Id.* at * 5.

In *Budhun v. Reading Hospital and Medical Center*, 2011 U.S. Dist. LEXIS 75910 (E.D. Pa. July 13, 2011), the court denied the plaintiff's motion for leave to amend her complaint to add a claim under the ADA, finding it would be futile. In her proposed amended complaint, plaintiff alleged she "fractured her fifth metacarpal on her right hand resulting in the temporary loss of use of her pinky finger" for two and a half months. *Id.* at *2. The court held that the plaintiff's allegations, assumed to be true, did not rise to the level of a disability under the ADA. The court noted that "[t]emporary impairments . . . such as a broken leg, are not commonly regarded as disabilities, and only in rare circumstances would the degree of limitation and its expected duration be substantial." *Id.* at *6. It further held "[b]ecause of the temporary nature of the injury, [plaintiff] is not disabled under the ADA…" *Id.* at *1.

Again, in *Gomez v. Dynamic Mfg.,* 2013 U.S. Dist. LEXIS 90641 (N.D. Ill, June 27, 2013), the court granted defendant dismissal of plaintiff's ADA claim under Rule 12(b)(6) where he did not sufficiently allege "that his broken leg substantially limited a major life activity and that the limitation was permanent or long term." *Id.* at * 11. In *Gomez*, the court acknowledged that it was *possible* for a broken leg to rise to the level of a disability, but only if the condition was "so

chronic and severe that it substantially limits the major life activity of walking," and the limitation must be "permanent or long term." *Id.* at *10.

Other courts have granted summary judgment for the same reason. *See, Clark, supra* (granting summary judgment and noting that "[t]he phrase 'substantially limits' sets a threshold that excludes minor impairments from coverage."); *Fischbach v. Community Mercy Health Partners*, 2012 U.S. Dist. LEXIS 139019 (S.D. Ohio Sept. 27, 2012) (summary judgment granted despite plaintiff's "serious knee injury;" her need to use cane to walk 20 months after injury and "later deterioration of her knee impairment" did "not show that her knee impairment was anything more than a temporary impairment at or near the time of her termination"); *Poper v. SCA Americas, Inc.*, 2012 U.S. Dist. LEXIS 113653 (E.D. Pa., Aug. 13, 2012) ("A temporary non-chronic impairment of short duration is not a disability covered under the ADA."); *Merriweather v. Chicago Transit Authority*, 2013 U.S. Dist. LEXIS 19590 (N.D. Ill., Feb. 8, 2013) (five month "short term" duration of alleged mental impairment held not an ADA disability).

Here, at the time of Plaintiff's termination, Plaintiff's doctor expected his injuries and restrictions to be temporary. *[J.A. at 40, ¶ 15].* Plaintiff also alleged that his injuries were expected to heal completely. *[Id.].* Specifically, Plaintiff alleged that his doctor estimated he would be able to bear weight on his leg after "six weeks," would be able to drive after "five months," would be able to "walk

27

normally in, at the earliest, seven months" and that he would regain "complete mobility" and walk "pain free within a year of the accident."[5] *[Id.]*.

Based on the facts as pled in his Complaint, Plaintiff's injuries at the time of his termination resulted in nothing more than a temporary impairment that was expected to heal completely. As a matter of law, Plaintiff's temporary impairment was not a disability under the ADA or the ADAAA. Plaintiff's Complaint was properly dismissed for this reason.

### B. PLAINTIFF'S ALLEGATIONS REGARDING THE DEVELOPMENT OF HIS PHYSICAL CONDITION AFTER HIS TERMINATION ARE IRRELEVANT.

Plaintiff, and to some extent Amici Curaie, make extended arguments based upon facts that are fundamentally irrelevant. Specifically, Plaintiff argues that his physical condition, as it developed over time *after* his discharge, was worse than initially estimated, and that his true condition warrants a finding that he was disabled under the ADA. This argument is unsound. Courts repeatedly have held that a plaintiff's condition as known to exist *at the time of the employer's adverse employment decision* is the relevant inquiry.

This Court in *Wilson v. Dollar General Corp.*, 717 F3d 337 (4th Cir. 2013) recently made this explicit point:

---

[5] Plaintiff has exaggerated his impairment in his Brief on Appeal, claiming he broke both legs and could not work for 14 months. Plaintiff's Complaint alleges he fractured only his left leg *[Id. at 39, ¶ 14]*, and he was expected to be able to "walk normally" in seven months, an estimate that "turned out to be accurate." *[Id. at 40, ¶ 15]*.

In determining whether leave would or would not have enabled an individual to perform the essential functions of a position, it is improper to consider, as the district court did here, evidence of the individual's abilities beyond his or her proposed return date. In leave cases, the accommodation must be for a *finite* period of leave. See, *Halpern,* 669 F.3d at 465-66. Once that period lapses, it then becomes apparent whether the withheld accommodation would have been successful or futile. **Evidence indicating that weeks or even months after the individual's proposed return date, the individual became able or unable to work, is untethered to the initial request. Accordingly, evidence Wilson later suffered an additional medical setback and could not return to work until a year later, is irrelevant to the question of whether he could have performed the essential functions of his position if given two days of leave.** (Emphasis added.) 717 F.3d at 346, n.8.

Other Circuit courts have held likewise. For example, as noted in *Kocsis v.*

*Multi-Care Mgmt., Inc.*, 97 F. 3d 876, 884 (6th Cir. 1996):

In order to recover on any of her ADA claims, [plaintiff] must first establish as part of her prima facie case that she was a "qualified individual with a disability" *at the time of the discriminatory act.* (emphasis in *Kocsis*) (footnote omitted).

*See also Browning v. Liberty Mutual Ins. Co.*, 178 F. 3d 1043, 1048-49 (8th Cir. 1999) (the fact plaintiff became a qualified individual who could perform the essential functions of her job after her termination "does not obviate the fact that she was not a qualified individual at the time of her termination, and thus not under the protective umbrella of the ADA."); *Cash v. Smith*, 231 F. 3d 1301, 1306 fn. 5 (11th Cir. 2000) (for ADA purposes, an employee's alleged disability is evaluated as manifested at the time of the employment action in question).

Plaintiff in this case repeatedly argues that he was unable to walk for 14 months. Yet, this claim is based on evidence unavailable at the time of Plaintiff's termination, and hence is irrelevant. Plaintiff's allegations regarding the slow pace of his recovery, the continued impact of his injuries, and the notion that his recovery took longer than expected are legally irrelevant to whether he suffered from a disability cognizable under the ADA at the time of his termination. *[J.A. at 40, 42, 44]*. Likewise, the fact Plaintiff's doctor rendered an overly "optimistic" estimate of his recovery is of no legal significance. *[J.A. at 40]*.

Based upon Plaintiff's medical condition as of the date of his termination from employment by Altarum, he was suffering only a temporary impairment that did not plausibly constitute a substantial limitation of a major life activity. Thus, his Complaint was properly dismissed.

### C. PLAINTIFF'S SURGERY IS NOT A "MITIGATING MEASURE" AND HIS CONDITION MUST BE EVALUATED IN LIGHT OF HIS POST-SURGERY CONDITION

Plaintiff engages in a curious effort to confuse the issues before the Court by claiming that his surgeries constitute a "mitigating measure" under the ADAAA. While the ADAAA directs that "the determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures," the examples given of "mitigating

measures" noticeably *exclude* most of the items cited by Plaintiff in his Complaint. *See 42* U.S.C. *§ 12102(4)(E); 29 C.F.R. § 1630.2(j)(1)(vi).*

In particular, the ADAAA does not include surgery as a mitigating measure. Mitigating measures include medication, medical supplies, equipment or appliance, low-vision devices, prosthetics, hearing aids and cochlear implants, mobility devices, or oxygen therapy equipment and supplies. 42 U.S.C. § 12102(4)(E) (i). Surely, Congress did not omit a potentially obvious mitigating measure such as surgery by mistake. Tens of millions of Americans each year have surgeries for one reason or another.[8] Had Congress intended to require that the determination of whether an impairment substantially limits a major life activity be made without regard to basic surgical procedures, such as setting a broken leg or repairing a torn tendon, it certainly would have so declared.

The EEOC's Final Rule of March 25, 2011 issuing regulations on the ADAAA essentially acknowledged that surgery was not intended to be a mitigating measure under the Act. *[76 Fed. Reg. 16,977 (March 25, 2011)].* Specifically, in the Introduction's discussion on "Mitigating Measures," the EEOC acknowledged that "[n]umerous comments were made on the proposed inclusion of surgical

---

[8] In 2010, 51.4 million inpatient surgical procedures were performed in the U.S. in non-federal hospitals, according to a National Hospital Discharge Survey published by the Centers for Disease Control ("CDC"). In turn, in 2006, the CDC reported that an estimated 57.1 million surgical and non-surgical procedures were performed during 34.7 million outpatient surgery visits.

31

interventions as mitigating measures," with many asking the EEOC "to delete the reference to surgical interventions entirely; [while] others wanted us to delete the qualification that surgical interventions that permanently eliminate an impairment are not considered mitigating measures." *[Id. at 16,983]*. Instead, the EEOC elected to completely eliminate reference to surgery or surgical interventions as an example of a mitigating measure. *Id.,* Preamble to Final Rule. Thus, while the Preamble suggests that determinations about whether surgical interventions should be considered as a mitigating measure "are better assessed on a case-by-case basis," the EEOC's actual Final Rule completely omits surgery as a mitigating measure, as does the ADAAA itself.

There is therefore no directive under either the ADAAA or the EEOC's Final Rule that Plaintiff's condition must be evaluated on the basis of his surgeries. Congress's omission of surgery as a mitigating measure can only be construed as intentional. Indeed, to construe Plaintiff's surgeries as a mitigating measure essentially would throw the courts into an impossible quagmire, forcing them to divine what a particular employee's condition might be if, for example, he forewent the process of surgically repairing his broken leg and instead let it heal naturally. The task would be impossible, and inherently speculative.

In contrast, for most of the identified mitigating measures, it is readily apparent what the employee's condition is with, and without, the mitigating

32

measure. For example, the benefit of adding a prosthetic device, or a hearing aid or cochlear implant, is easily assessable. Surgery to repair a broken bone or injured leg is simply not the type of mitigating measure Congress meant to cover.

Accordingly, Plaintiff's speculative arguments as to the nature of his condition without benefit of surgery are irrelevant. Based upon his condition as known at the time of his termination, he was temporarily impaired and expected to fully heal. As such, he did not plausibly plead a disability under the ADA.

### D. THE EEOC'S REGULATIONS DO NOT COMPEL A FINDING THAT THE TEMPORARY IMPAIRMENTS PLED BY PLAINTIFF CONSTITUTE A SUBSTANTIAL LIMITATION OF A MAJOR LIFE ACTIVITY.

Plaintiff has argued that Congress intended the ADAAA to expand coverage under the ADA to individuals, such as Plaintiff, who have a temporary impairment resulting from an injury, even though the impairment is expected to completely heal. Plaintiff cites no case law supporting this proposition. Perhaps in recognition of this fact, Plaintiff next argues that the EEOC's regulations should be given controlling weight, citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984).

Plaintiff's argument is misplaced for several reasons. First, there is no reason for this Court to defer to the EEOC's regulations where, as here, the "traditional rules of statutory construction" are sufficient to ascertain Congressional intent. *Chevron*, 467 U.S. at 842, n. 9. As recently explained in

33

*Chamber of Commerce of the United States v. NLRB*, 2013 U.S. App. LEXIS 12034 (4th Cir. 2013):

> We [first] ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43. Only "if the statute is silent or ambiguous with respect to the specific issue" are we to proceed to Chevron's second step, asking "whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843.

The Court in *Chamber of Commerce* further explained that under Chevron's first step, the Court "must use the 'traditional tools of statutory construction' to ascertain congressional intent." 467 U.S. at 842 n.9. It then stated:

> We thus look to the text of the statute, along with "the overall statutory scheme, legislative history, the history of evolving congressional regulation in the area, and . . . other relevant statutes." *Brown & Williamson*, 153 F.3d at 162 (citations and quotation marks omitted). We are only to employ the deference of step two when the "devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600, 124 S. Ct. 1236, 157 L. Ed. 2d 1094 (2004). Because we do not presume a delegation of power simply from the absence of an express withholding of power, we do not find that Chevron's second step is implicated "any time a statute does not expressly negate the existence of a claimed administrative power." *Am. Bar Ass'n*, 430 F.3d at 468 (citation and internal quotation marks omitted).

In this case, there is no need for the Court to defer to the EEOC's regulations. The intent of Congress *not* to extend ADA coverage to those with temporary impairments expected to fully heal is evident from the mere fact such an

34

intent is absent from Congress's statement of the findings and purposes of the ADAAA. *See, 42* U.S.C. *§ 12101(a), (b).* Further, statements of Congressional intent focus on inclusion of disabilities such as HIV-AIDS, epilepsy, diabetes and other permanent, life-long impairments, without any mention of temporary impairments due to injuries. Finally, the inclusion of those suffering temporary impairments due to injuries expected to heal would vastly expand the reach of the ADA, to the point that 100 million or more Americans might be covered. Certainly, such a dramatic expansion of the ADA would have been accompanied by some pertinent statement of Congressional intent to reach those injured but expected to fully recover, but there is none.

In a similar circumstance, this Court found in *Chamber of Commerce* that Congress's continued exclusion of a notice-posting requirement from the National Labor Relations Act supported a conclusion that it had deliberately not granted such authority to the National Labor Relations Board. As the Court there stated: "Had Congress intended to grant the NLRB the power to require the posting of employee rights notices, it could have amended the NLRA to do so." 2013 U.S. App. LEXIS 12034 at *41.

A similar sentiment applies here. Had Congress, in adopting the ADAAA, intended to extend the ADA to reach those with temporary impairments expected

35

to fully heal, it undoubtedly would have said so. It did not. Thus, there is no reason to defer to the EEOC's regulations on this subject.

This is particularly true since, even before passage of the ADAAA, the EEOC had taken the position that an impairment lasting only several months could be a disability. Yet, this Court in *Pollard*, and many other courts, had consistently rejected this concept. Thus, had Congress wanted to sweep those with temporary impairments due to injury within the ambit of the ADAAA, it would have taken care to so state, since it would have known that case law rejected such a concept. Again, by broadly expanding coverage of the ADA without directly including within its protections those with temporary conditions, Congress clearly did not intend for such a result.

Second, Plaintiff's argument for *Chevron* deference to the EEOC is misplaced because, to the extent the EEOC's regulations suggest an individual with a temporary condition fully expected to heal within seven months to one year is disabled, such regulation is not a "permissible construction" of the ADAAA. As explained above, there is nothing in the ADAAA that expresses an intent to broaden the ADA's coverage so far that those temporarily impaired due to injury are included. To the contrary, Congress made clear that not every impairment was to be covered under the ADAAA. If the ADA is stretched to cover those such as

36

Plaintiff who are injured but expected to fully recover within a number of months, very few if any impairments will not be covered.

Finally, even if the Court were to accord the EEOC deference, the fact is there is no direct regulatory guidance declaring that a temporary impairment caused by injury which is expected to fully heal within a number of months is a disability.  29 *C.F.R.* § 1630.2(j)(1)(ix) is at best indefinite as to what types of impairments lasting or expected to last fewer than six months can be substantially limiting, nor is the phrase "within the meaning of this section" in that regulation clear and unambiguous.   More pointedly, that regulation does not direct that temporary impairments due to injuries are to be treated the same as impairments due to permanent or long-term conditions that have only a short term impact.  As such, even if deference is accorded the EEOC on this point, the regulation does not support the construction placed upon it by Plaintiff.

## II.    THE DISTRICT COURT PROPERLY FOUND THAT PLAINTIFF DID NOT PLEAD FACTS TO PLAUSIBLY SHOW HE WAS A "QUALIFIED INDIVIDUAL" WITH A DISABILITY BECAUSE HE COULD NOT COULD PERFORM THE ESSENTIAL FUNCTIONS OF HIS JOB WITH OR WITHOUT A REASONABLE ACCOMMODATION.

Even if the district court erred in ruling that Plaintiff had failed to plead facts plausibly showing he had an ADA-cognizable disability, which it did not, the district court's ruling should be upheld because Plaintiff was not a qualified individual with a disability.  This is because Plaintiff failed to request a reasonable

37

accommodation that would allow him to perform his essential job functions during the period of his temporary impairment.

Plaintiff's Complaint, as confirmed by the judicial admissions of his counsel, establishes that the only accommodation he requested was to work from home on a temporary, indefinite basis, transitioning from part-time to full-time. *[J.A. at 46, ¶49; J.A. at 69]*. Plaintiff has not alleged facts, however, sufficient to plausibly show that with this accommodation, he could have performed the essential functions of his job. As such, Plaintiff cannot show that he was a "qualified individual" with a disability.

The ADA defines a "qualified individual" as "an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *42 U.S.C. § 12111(8)*. To support a reasonable accommodation claim, a plaintiff must show that (1) he was disabled; (2) his employer had notice of his disability; (3) he could perform the essential functions of his position with reasonable accommodation; and (4) his employer refused to provide such accommodation. *Rhoads v. FDIC, 257* F.3d 373, 387 (4th Cir. 2001). "A job function is essential if it 'bear[s] more than a marginal relationship to the job at issue.'" *Rohan*, 375 F.3d at 279 (quoting *Tyndall v. Nat'l Ed. Centers, Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)). As noted in *Tyndall*, a "qualified" person must be "able to meet all of a program's

38

requirements in spite of his handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406 (1979).

Thus, to determine whether Plaintiff sufficiently pled that he was qualified for his position, the Court must decide (1) whether he could "perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue," and (2) if not, whether "any reasonable accommodation by the employer would enable him to perform those functions." *Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993). *Tyndall*, 31 F.3d at 213. *Tyndall* also held: "Plaintiff bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation." *Id. See Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990). Further, the requested accommodation can never involve the elimination of an essential job function. *McMillan v. City of New York*, 711 F.3d 120, 127 (2nd Cir. 2013).

In this case, Plaintiff's requested accommodation of working at home could only be reasonable, if at all, if it would have permitted him to perform his essential job functions. Because the facts as pled and admitted by Plaintiff make clear his sole requested accommodation would not have allowed him to perform all of his essential job functions, including on-site client meetings at DCoE's offices, he failed to state a claim under the ADA.

### A.  PLAINTIFF HAS ABANDONED THE ISSUE OF WHETHER HE WAS A "QUALIFIED INDIVIDUAL".

First, Plaintiff has abandoned the issue of reasonable accommodation. Plaintiff in his Brief on Appeal does not even address this issue. Yet, this was an issue given extensive consideration by the district court, and plainly represented an alternative basis for the dismissal of Plaintiff's Complaint under Rule 12(b)(6). Since Plaintiff has not seen fit to argue or brief this issue, this Court should conclude that Plaintiff has abandoned his claim that a reasonable accommodation existed that would allow him to perform essential job functions.

For this reason alone, the district court's dismissal of Plaintiff's Complaint should be affirmed. See Fed. R. App. P. 28(a)(9)(A) ("appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . ."); *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned."); *Yousefi v. INS,* 260 F.3d 318, 326 (4th Cir. 2001) (failure to raise issue in opening appellate brief results in abandonment of that issue on appeal). See, also, *Grice v. Baltimore County*, 354 Fed. Appx. 742, 745 (4th Cir. 2009) (plaintiff's failure to address her demotion and retaliation claims in her opening brief "results in the abandonment of those claims on appeal.").

Unlike Plaintiff, Amici Curiae in their Brief do address this issue. *[Doc. # 23 at 16-21]*. This does not, however, resurrect a claim abandoned by Plaintiff in his opening brief. Moreover, as more fully explained below, the Brief of Amici Curiae is untethered to the facts pled by Plaintiff and admitted by his counsel.

Should this Court consider this issue despite its abandonment by Plaintiff, the facts as pled and as admitted by Plaintiff's counsel compel the conclusion reached by the district court: Plaintiff's request to work at home was not a reasonable accommodation and would not allow him to perform essential job duties. As such, Plaintiff was not a "qualified individual" under the ADA.

### B. THE ACCOMMODATION REQUESTED BY PLAINTIFF TO WORK AT HOME WOULD NOT HAVE ALLOWED HIM TO PERFORM THE ESSENTIAL, ON-SITE FUNCTIONS OF HIS JOB

During oral arguments in *Summers I*, Plaintiff's counsel explicitly admitted that Plaintiff's job required him to work on-site at DCoE's location. For example, he asserted that "at least part of [Plaintiff's] job required him to actually get to the worksite" *[J.A. at 24]*; that Plaintiff "has to move around the office, walk from meeting to meeting, meet with clients" *[Id. at 25]*; that Plaintiff "was required to walk in order to accomplish that job" *[Id.]*; and that Plaintiff had to be at the office to do his job *[Id. at 29]*.

These admissions are binding on Plaintiff. A verbal admission by counsel at oral argument is a binding judicial admission, the same as any other formal

41

concession made during the course of proceedings. *See Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997); *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal.").

A similar principle applies in the Fourth Circuit. In *FOP Lodge No. 89 v. Prince George's County*, 608 F.3d 183, 190 (4th Cir. 2010), citing to *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 265 n.2 (4th Cir. 2004), this Court held that a lawyer's statements may constitute a binding admission of a party which will be afforded preclusive effect, so long as such statement is "deliberate, clear, and unambiguous."

Here, the admission of Plaintiff's counsel that Plaintiff's essential job functions included on-site office work were deliberate, clear and unequivocal. Indeed, counsel repeated several times that Plaintiff was required to perform various duties on-site. Moreover, these admissions are corroborated by Plaintiff's Complaint. Plaintiff alleged his duties required conducting research, data analysis, journal research, report writing, presentations, and SPSS programming. *[J.A. at 38, ¶ 8].* He also alleged that in his job with Altarum, he frequently commuted to DCoE's offices in Silver Spring, Maryland, and he was commuting to DCoE when

42

he was injured. *[Id., ¶ 9, 13]*. Finally, he alleged that DCoE preferred for contractors to work at its offices during normal business hours. *[Id., ¶ 10]*.

The admissions of Plaintiff's counsel together with the facts as alleged in the Complaint leave no doubt that Plaintiff's essential job functions required his presence at work. Presentations to clients, attending meetings, and other office duties cannot be done from one's couch or coffee table at home. As such, this Court must accept as true, as did the district court, that Plaintiff's job duties required his on-site presence at DCoE.

While Plaintiff has not addressed this issue on appeal, Amici Curiae cited precedent from two district courts as well as the First and Second Circuits which suggested that working from home might be a reasonable accommodation. None of the cited cases, however, is remotely relevant. In *Willinghan v. Town of Stonington*, 847 F. Supp. 2d 164, 187-188 (D. Maine 2012), the plaintiff's requested accommodation to perform "a combination of home and office work" was "only for two days," not the several months requested by Plaintiff here, and there was nothing to suggest plaintiff's position "was so critical that a two-day period of home and office work would not have been reasonable." Here, Plaintiff's counsel admitted Plaintiff had to be at work to meet with clients and perform other duties. Thus, *Willingham* has no relevance to the facts as pled by this Plaintiff.

43

Amici Curiae also cited the First Circuit's decision in *Gillen v Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 25 (1st Cir. 2002) for the proposition that "the complex question of what constitutes an essential job function involves fact-sensitive considerations and must be determined on a case-by-case basis." Be that true or not, the fact is that in this case, *Plaintiff has admitted* that an essential job function was being at the office to meet clients and make presentations. And, Plaintiff himself has not contested this point in his Brief on Appeal. As to this case, therefore, the "complex question" of what constitutes an essential job function is well-settled. No discovery on this point is needed.

The two other decisions cited by Amici Curiae are equally inapposite. Indeed, *McMillan v. City of New York*, 711 F.3d 120, 126 (2nd Cir. 2013), did not even involve a request to work at home. Instead, plaintiff's requested accommodation was for flex time, i.e., to arrive at work after 10:15 a.m., not to work from home. In essence, plaintiff wanted to be tardy, and the evidence showed he had been allowed to be tardy in the past. As such, the Court held:

> Physical presence at or by a specific time is not, as a matter of law, an essential function of all employment. While a timely arrival is normally an essential function, a court must still conduct a fact-specific inquiry, drawing all inferences in favor of the non-moving party. Such an inquiry was not conducted here.

In contrast to *McMillan,* in this case, the District Court relied on Plaintiff's own assertions that his presence at the office was required, as well as the

allegations of Plaintiff's Complaint. Thus, unlike in *McMillan*, there was no "assumption" by the District Court that physical presence was an essential requirement of Plaintiff's employment. Finally, the case should be seen as limited to its facts, given the Court's recognition that "the district court's conclusion would be unremarkable in most situations." 711 F.3d at 126.

The fourth case cited by Amici Curiae, *Dahlman v. Tenenbaum*, 2011 U.S. Dist. LEXIS 88220 (D. Md. Aug. 9, 2011), did not involve a request, such as that made by Plaintiff here, to work exclusively from home. Rather, the plaintiff in *Dahlman* was able to continue reporting to work for two days a week, and requested to work the other three days from home. Indeed, the *Dahlman* court itself drew this very distinction, finding that the cases relied upon by defendant in which working at home was deemed not reasonable were cases in which "the employee was requesting to work exclusively at home." *Id. at *37-38.*

That is the case here. Plaintiff sole requested accommodation was to work exclusively from home, first part-time, then full-time, with an unknown return date for on-site, office work. Neither *Dahlman* nor any case cited by Amici Curiae held that such an accommodation could be deemed reasonable, and certainly not where the Plaintiff through counsel admitted the essential nature of his office duties. As such, even if this Court were to consider the reasonable accommodation issue, it must be rejected.

45

## C.   WORKING FROM HOME INDEFINITELY IS NOT A REASONABLE ACCOMMODATION.

It is axiomatic that physical attendance in the workplace is an essential function of nearly all jobs. *Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998); *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997); *Vande Zande v. Wis. Dept. of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995). As the Fourth Circuit explained:

> In addition to possessing the skills necessary to perform the job in question, <u>an employee must be willing and able to demonstrate these skills by coming to work on a regular basis</u>. Except in the unusual case where an employee can effectively perform all work-related duties at home, <u>an employee who does not come to work cannot perform any of his job functions, essential or otherwise</u>.

*Tyndall v. Nat'l Ed. Centers, Inc.*, 31 F.3d 209, 213 (4th Cir. 1994) (Emphasis added).

The ADA does not require an employer to wait indefinitely for an employee to be well enough to work. *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995); *see also Thornton v. Gonzalez*, 2007 U.S. Dist. LEXIS 98039, 9-10 (E.D. Va. Aug. 27, 2007) ("it is not reasonable for Plaintiff to require the DEA to have waited indefinitely for him to become fit for duty. . . ."). Rather, a reasonable accommodation is "one that allows the employee to perform job functions in the immediate future." *McIntyre-Handy v. APA Customer Services, Inc.*, 2005 U.S. Dist. LEXIS 41752, at *24 (E.D. Va. May 13, 2005).

46

Courts have repeatedly held that an accommodation which seeks to eliminate an essential job function is, as a matter of law, not a reasonable accommodation. Instead, a reasonable accommodation "is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers,* 50 F.3d at 283; *see also Kitchen v. Summers Continuous Care Ctr., LLC,* 552 F. Supp. 2d 589, 596 (S.D. W. Va. 2008). A plaintiff cannot prevail by demonstrating that she might be able to perform such functions at some uncertain time in the future. *Id.*

Given the essential job requirement that Plaintiff perform work duties at DCoE's offices, his counsel's admission that for "several months" Plaintiff could not get to the office amounts to an admission that Plaintiff was not a "qualified individual" under the ADA. See, *Harris v. Reston Hospital Center,* 2013 U.S. App. LEXIS 8323 (4th Cir. April 24, 2013) (under ADAAA, plaintiff's extensive absences and physical incapacity negated her ability to perform the essential functions of her job; as such, she could not establish she was a "qualified individual" with a disability).

*McMillan v. City of New York,* 711 F.3d at 120, the Second Circuit case relied upon by Amici Curiae, held to the same effect:

> Of course, "[a] reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon v. N.Y. City Transit Auth.,* 332 F.3d 95, 100 (2d Cir. 2003).

47

What was true in *Tyndall*, 31 F.3d at 213, remains true:

> Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee "who does not come to work cannot perform *any* of his job functions, essential or otherwise."") *Moore v. Md. Dep't of Pub. Safety & Corr. Servs. P*, 2013 U.S. Dist. LEXIS 19471.

Here, Plaintiff's alleged request to work at home failed to identify how long he would need to work at home. Based on his injuries, his counsel asserted it would have been for "several months" *[J.A. at 27]*. Given Plaintiff's assignment to work on-site for DCoE, this type of free pass to work at home, without direct supervision, is inherently unreasonable. As in *Myers*, the sole accommodation requested by Plaintiff would not have allowed him "presently, or in the immediate future," to perform his essential job functions. As such, Plaintiff's request was unreasonable as a matter of law, and demonstrates he was not a "qualified individual" under the ADA. *Harris, supra.*

### D.    AS PLAINTIFF WAS NOT APPROVED TO WORK FROM HOME, THIS WAS NOT A REASONABLE ACCOMMODATION.

Even if working from home could be a reasonable accommodation in some cases, it was not an available option here. Altarum could not unilaterally allow a contractor assigned to a client, such as Plaintiff, to work for the client from home. Instead, the client controlled the terms of work, including where the work was to be performed. Indeed, Plaintiff's Complaint concedes that client approval was

required for Altarum to permit a contractor such as Plaintiff to work remotely full-time. *[J.A. at 39, ¶ 11]*.

Yet, Plaintiff's Complaint is devoid of any allegation that the DCoE approved for him to work remotely on the type of extended and indefinite basis which he purportedly requested. Thus, based upon Plaintiff's own allegations, Altarum could not authorize him to work remotely as he recovered from his serious, but temporary, injuries.

Altarum had no means by which to require the DCoE to restructure Plaintiff's position into a home-work job, nor was either Altarum required to eliminate *any* of the essential functions of Plaintiff's job as an accommodation for his broken leg and other injuries. *Harris, supra*. For this reason as well, therefore, Plaintiff's requested accommodation was not reasonable as a matter of law.

### E. PLAINTIFF CANNOT STATE A CLAIM FOR FAILURE TO ACCOMMODATE BASED ON ACCOMMODATIONS HE DID NOT REQUEST.

Plaintiff clarified to the district court that he was not seeking a leave of absence, indefinite or otherwise. And, he has not argued in his Brief on Appeal that he should have been granted a leave of absence. Accordingly, this issue is not before the Court. Even if it were, the Fourth Circuit has made clear that the duty of reasonable accommodation does not require an employer to grant a disabled

employee an indefinite leave of absence to treat the disabling condition. *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

Additional medical leave is a reasonable accommodation only where it is "finite and will be reasonably likely to enable the employee to return to work." *Kitchen, LLC*, 552 F. Supp. 2d at 596. Further, under the ADA, an employer cannot be held liable for failure to accommodate where the employee has not requested the accommodations at issue. See, *Hansberry v. Computer Eng'g Sys. Corp.*, 1998 U.S. Dist. LEXIS 13508 (E.D. Va. July 29, 1998).

A similar result is warranted here. Plaintiff does not allege that he ever actually requested "a temporary period of part-time or light duty, the use of a wheelchair or scooter at work," "or some combination" of various possible accommodations. *[J.A. at 46].* Rather, Plaintiff's Complaint alleges that the only accommodation he discussed with Altarum was to work from home, which as a matter of law is not a reasonable accommodation. *[J.A. at 41, 46].*

Under the ADA, the burden of requesting and proposing alternative reasonable accommodations is on the employee. Here, Altarum cannot be held liable for failing to provide accommodations that Plaintiff does not allege he ever requested and has raised for the first time in his Complaint. Given that Plaintiff's sole requested accommodation (to work from home indefinitely) was unreasonable, he cannot establish an ADA violation as a matter of law.

50

**F.     PLAINTIFF CANNOT STATE A CLAIM FOR FAILURE TO ACCOMMODATE BY ALLEGING THAT ALTARUM FAILED TO ENGAGE IN THE INTERACTIVE PROCESS.**

Plaintiff attempts to divert the Court's focus away from the dispositive issue of whether his requested accommodation of working at home was reasonable by alleging that Altarum failed to engage in the interactive process.  Yet, Plaintiff cannot base his failure to accommodate claim solely on this allegation.  Indeed, it is well-established that a plaintiff cannot state a failure to accommodate claim by showing only a failure of his employer to engage in the interactive process:

> An employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process, but rather must demonstrate that the employer's failure to engage in an interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee.

*Kemp v. Volvo Group North America, Inc.*, 2013 U.S. Dist. LEXIS 9454 (W.D. Va. Jan. 24, 2013) citing *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011).

"[A] plaintiff must show that a reasonable accommodation existed, before a court may find that an employer's purported failure to engage in an interactive process was unlawful." *Wells v. BAE Systems Norfolk Ship Repair*, 483 F. Supp. 2d 497, 511 (E.D. Va. 2007) citing *Jackson v. City of Chicago,* 414 F.3d 806, 813 (7th Cir. 2005). *See also Ainsworth v. Loudon County Sch. Bd.*, 851 F. Supp. 2d 963, 981 (E.D. Va. 2012) (dismissing plaintiff's failure to accommodate claim on

the pleadings where plaintiff alleged the defendant failed to engage in the interactive process, but did not allege a reasonable accommodation other than leaves of absence, which the defendant granted).    Under the law, therefore, Plaintiff's assertion that Altarum failed to engage in the interactive process is irrelevant to his ADA claim.

Moreover, the facts as alleged by Plaintiff do not demonstrate that Altarum failed to engage in an interactive process with him.    Specifically, Plaintiff admits that while still in the hospital, he "spoke to an HR Representative at Altarum regarding working from home and short-term disability," and that Altarum suggested and allowed Plaintiff to remain off work on short-disability for six weeks. *[J.A. at 40, ¶17]*.    Moreover, Plaintiff alleges that Altarum did in fact respond to his request for information regarding flexibility in returning to work. *[J.A. at 41, ¶21]*.    Finally, Plaintiff has admitted that he was approved and paid for 90 days of short-term disability benefits. *[J.A. at 41-42, ¶¶ 23, 32]*.

These facts confirm that Altarum engaged in an interactive process with Plaintiff, and make clear that Plaintiff's argument to the contrary is not plausible. More critically, these facts show that the only accommodation Plaintiff requested was to work "remotely part-time and transition[] back to a full-time, on-site role as his recovery progressed." *[J.A. at 46, ¶¶ 49-50]*.    As noted above, this

52

accommodation was not reasonable, as it did not permit Plaintiff to perform essential job functions.

Plaintiff does not allege that he requested, or was even capable of using, any other type of accommodation at the time of his termination. In fact, his counsel admitted it would be "several months" before he could return to DCoE's office location. Thus, light-duty work, wheelchairs, or other mobility assistance would not have assisted Plaintiff in performing his essential job duties. As such, these additional accommodations, even if they had been requested, were not reasonable as a matter of law.

Altarum did allow Plaintiff a six-week leave of absence and facilitated Plaintiff's receipt of short-term disability benefit payments for 90 days. Plaintiff was eventually released from employment only after he had been given a reasonable time to return to work and his assignment has been terminated by the DCoE. Under the ADA, Altarum was not required to do anything more, and Plaintiff is unable to show that he was a "qualified individual" under the Act.

## CONCLUSION

For all of these reasons, the district court's decision should be affirmed.

53

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee respectfully requests oral argument in this matter because, in addition to the briefs and record on file, oral argument would aid in the decisional process. Fed. R. App. P.34(a); 4th Cir. L.R. 34(a).


**Respectfully Submitted,**

**s/Paul W. Coughenour**
**Paul W. Coughenour**
**Carly E. Osadetz**
**Clark Hill PLC**
**500 Woodward Avenue,**
**Suite 3500**
**(313) 965-8300**
**pcoughenour@clarkhill.com**
**cosadetz@clarkhill.com**

**Attorneys for Defendant-Appellee**
**Altarum Institute**

54

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-1645          Caption: Carl R. Summers v. Altarum Institute Corporation

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]     this brief contains ___13,026___ [state number of] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]     this brief uses a monospaced typeface and contains _____ [state number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]     this brief has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [identify word processing program] in
Times New Roman - 14 point size ___ [identify font size and type style]; **or**

[ ]     this brief has been prepared in a monospaced typeface using
_____ [identify word processing program] in
_____ [identify font size and type style].

(s) /s/Paul W. Coughenour _____

Attorney for Altarum Institute Corporation _____

Dated: August 12, 2013 _____

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that on the 12th day of August 2013, I electronically filed this **BRIEF OF APPELLEE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

R. Scott Oswald
David L. Scher
THE EMPLOYMENT LAW GROUP, PC
888 17th Street, NW, Suite 900
Washington, DC  20006

*Attorneys for Appellant Carl R. Summers*

Daniel B. Kohrman
AARP FOUNDATION LITIGATION
601 E Street, NW
Washington, DC  20049

*Attorney for Amici Curiae and National Employment Lawyers Association*

/s/Paul W. Coughenour
Paul W. Coughenour
*Attorney for Altarum Institute Corporation*